FIRST NATIONAL BANK OF NORTHAMPTON *vs.* MASSACHU‑
SETTS LOAN AND TRUST COMPANY.

Hampshire. Sept. 18. — Nov. 15, 1877. ENDICOTT & LORD, JJ., absent.
SOULE, J., did not sit.

A., by a contract in writing, pledged to B. certain tobacco, reciting that it was A.'s
"own property and free from all incumbrance and all of the crop" of a certain
year. B. borrowed money of C. and delivered the tobacco to him, and gave him an
assignment of all his "right, title and interest in and under the contract together
with all the property therein mentioned." *Held*, that there was no implied war‑
ranty of title to the tobacco or of its quality, between B. and C.

CONTRACT upon an alleged warranty. At the trial in the
Superior Court before *Allen*, J., without a jury, the following
facts appeared :

On December 5, 1873, S. R. Bell & Company, in considera‑
tion of a loan of $9330, pledged to the defendant 180 cases of
tobacco, and signed and delivered to the defendant a contract in
which the tobacco was described as follows : " The same being
our own property and free from all incumbrance, and all of the
crop of 1871."

On March 1, 1875, the plaintiff paid the defendant the sum
of $6646, and in consideration thereof the defendant signed and
delivered to the plaintiff the following assignment of the con‑
tract above mentioned : " For value received, we hereby assign
and transfer to the First National Bank of Northampton all our
right, title and interest in and under the contract, together with
all the property mentioned therein." On the same day, the de‑
fendant signed and delivered to the plaintiff a paper reciting the
assignment of the contract of S. R. Bell & Co., and continuing
as follows: " The said company has received therefor from said
bank $6646, with the guaranty of the company to the bank that
the above sum is the amount due on the contract."

The plaintiff offered evidence tending to show that, on pay‑
ment of the money stated in the assignment, the 180 cases of
tobacco were delivered to the plaintiff, and retained by it until
sold in the fall of 1875 ; that in August, 1875, one J. H. Lyman
demanded of the plaintiff seven of the cases of tobacco deliv‑
ered to the plaintiff, alleging that it was his property, and had
been pledged and transferred to the defendant without right

that Lyman brought an action of tort against the plaintiff in the Superior Court, for the conversion of the seven cases, and recovered judgment, and that the defendant, though requested, refused to defend the case.

The plaintiff also offered evidence tending to show that of the 180 cases, there were sixty cases not of the crop of 1871, but of the crop of 1870, a crop well known to be inferior in quality and market value to that of 1871, in consequence of which the plaintiff sustained a loss of $1500.

The judge ruled that the assignment and guaranty contained no warranty of title to the seven cases of tobacco, or that the sixty cases were of the crop of 1871 ; that the evidence offered was therefore inadmissible, and found for the defendant. The plaintiff alleged exceptions.

*C. Delano,* (*J. C. Hammond* with him,) for the plaintiff.

*H. D. Hyde,* for the defendant, was not called upon.

AMES, J. We see no ground on which these exceptions can be sustained. The position of the defendant in relation to the property was that of a pledgee. It is urged that the goods, at the time of the transfer to the plaintiff, were in the actual possession of the defendant, but this fact does not vary the case. The written assignment does not purport to be a sale of the goods, but of all the defendant's rights under the contract, and its obvious purpose was to substitute the plaintiff in the place of the original pledgee. What the defendant undertook to convey was all its " right, title and interest in and under the contract, together with all the property therein mentioned." The only express guaranty entered into by it was as to the amount remaining due upon the original contract. If, in addition to this, any guaranty can be said to have been implied, it certainly could not go beyond an assurance that it had not released or impaired any of its rights as pledgee, and that, for aught it knew to the contrary, the property was what the contract purported. 2 Addison on Con. (3d Am. ed.) § 614. In a conveyance of all of any party's right, title and interest in any subject matter, any warranty, express or implied, must be understood as limited by the granting clause, unless otherwise distinctly provided. *Allen* v. *Holton,* 20 Pick. 458. *Hoxie* v. *Finney,* 16 Gray, 332. *Exceptions overruled.*